**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelly Ann King-McDonald, | No. CV-19-00086-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Kelly Ann King-McDonald brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises four issues on appeal: 1) the Administrative Law Judge ("ALJ") failed to give legally sufficient reasons to reject Dr. Hassman's examining physician opinion that Plaintiff needed to frequently change positions; 2) the ALJ failed to give legally sufficient reasons to reject Plaintiff's subjective symptom testimony that she could not sit for long periods; 3) the ALJ failed to properly evaluate the lay witness statements of Plaintiff's daughter; and 4) the ALJ applied an incorrect, stricter definition of disability in finding Plaintiff not disabled. (Doc. 19).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 19, 20, & 21). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that this matter should be remanded for further administrative proceedings.

## I.    Procedural History

Plaintiff filed an application for social security disability benefits on December 3, 2014. (Administrative Record ("AR") 71). Plaintiff alleged disability beginning on July 2, 2014 based on diabetes, neuropathy, bulging discs, severe back and neck pain, severe migraines, optical migraines, severe TMJ, vertigo, asthma, bronchitis, lung problems, aortic valve replacement with minor aortic, mitral, and tricuspid leaks, severe sleep apnea, seizures, extreme fatigue, and anxiety. *Id.* Plaintiff's application was denied upon initial review (AR 70) and on reconsideration (AR 86). A hearing was held on September 11, 2017 (AR 40), after which ALJ Charles Davis found, at Step Four, that Plaintiff was not disabled because she could perform her past relevant work as an administrative assistant as generally performed. (AR 33–34). On December 17, 2018 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 2).

Plaintiff's date last insured ("DLI") for DIB purposes is December 31, 2019. (AR 26).[1] Thus, to be eligible for benefits, Plaintiff must prove that she was disabled during the time period of her AOD of July 2, 2014 and her DLI of December 31, 2019.

## II.    Factual History[2]

Plaintiff was born on July 31, 1965, making her 48 years old at AOD of her disability. (AR 71). She completed college in 2008. (AR 192). In the past 15 years she has worked as an executive administrative assistant in IT and finance, an IT administrative assistant, and a marketing administrative assistant. (AR 193).

### A.    Treating Physicians

A March 2, 2013 echocardiogram showed mechanical aortic valve replacement without significant change in gradient compared to prior echo in 2012, preserved left ventricular ejection fraction, and no significant other valvular abnormalities. (AR 452).

On April 2, 2013 Plaintiff was seen for pulmonary hypertension and reported

---

[1] The disability determination explanations at the initial and reconsideration levels state that Plaintiff's DLI is December 31, 2017; however, the ALJ stated that Plaintiff's DLI is December 31, 2019. (AR 26, 71, 87)

[2] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal.

episodes of respiratory distress and increased daytime sleepiness. (AR 405).

On June 3, 2013 Plaintiff reported she was breathing better with no shortness of breath and minimal cough, but had daytime sleepiness. (AR 396). A pulmonary function test was mostly normal. (AR 399).

On August 13, 2013 Plaintiff reported a severe headache with aura and vertigo. (AR 371).

On November 15, 2013 Plaintiff stated she was sleeping well with her CPAP machine. (AR 394). Her asthma was stable. (AR 395).

On December 10, 2013 Plaintiff reported she hurt her back bending down and had left ankle pain and weakness. (AR 326). On exam she had decreased back range of motion due to pain, point tenderness at the paraspinal muscles of the lumbar spine, and left ankle pain with range of motion. (AR 328). X-rays of the left ankle showed hypertrophic and posttraumatic irregularities from old trauma and no acute abnormalities. (AR 329).

On February 27, 2014 Plaintiff reported a severe headache with double vision and gait imbalance, different from her typical migraines, and was referred to the ER for evaluation. (AR 322, 324).

On May 19, 2014 Plaintiff was seen for a psychiatric evaluation because her neurologist was concerned about her anxiety. (AR 659). Plaintiff denied feeling depressed and said anxiety, poor concentration, and bad energy were related to her medical problems and being forced out of her job. Plaintiff reported she had been on Celexa since 2006 for depression after her heart valve surgery. Review of systems was negative except for back pain and headaches, and the mental evaluation was generally normal. (AR 662). The assessment was generalized anxiety disorder and major depressive disorder, recurrent, in remission, and Celexa was increased to address anxiety. (AR 662–663). At a follow-up on June 11, 2014 Plaintiff reported she was doing ok overall and the medication increase was helpful. (AR 664–665). Plaintiff had another follow-up on July 30, 2014 and reported Celexa was working well. (AR 668–669).

On May 21, 2014 Plaintiff reported severe headaches that began in her 30s, a dull

headache every day, and various types of headaches including a "brain freeze" headache, headache in the crown with pain behind the eyes, and vertigo. (AR 363). The impression was migraine, suspected anxiety related trigger; and spells/vertigo, needs continuous EEG to help clarify. (AR 364).

On September 10, 2014 Plaintiff was seen for follow-up of headaches and spells and reported constant headaches, worse with exertion. (AR 376). On exam her head and neck were tender to palpation, and straight leg test positive on the right. (AR 377). Plaintiff was prescribed a new migraine medication and referred for an MRI for her lower extremity pain.

On January 12, 2015 Plaintiff was seen for a cardiology follow-up. (AR 348). Since her last appointment in 2013, she had recurrent dizziness and vertigo, thought to be secondary to anxiety. A January 28, 2015 echocardiogram showed impaired relaxation, left atrium mildly dilated, normally functioning prosthetic valve with no significant change of gradient, trace mitral regurgitation, and mild tricuspid regurgitation. (AR 441).

On May 5, 2015 Plaintiff was seen for back pain and shortness of breath. (AR 475). A chest x-ray was unremarkable and a CT of the aorta and for pulmonary embolism showed no acute abnormalities. (AR 434, 439, 478).

An August 13, 2015 x-ray of the lumbar spine showed mild degenerative endplate spurring. (AR 462).

On January 27, 2016 Plaintiff reported recurrent episodes of palpitations and windedness with exertional activities, and said she had to stop several times walking from the parking lot to the doctor's office. (AR 487). An echocardiogram on February 23, 2016 showed left ventricular size, thickness, and systolic function normal, impaired relaxation, normally functioning mechanical prosthetic valve, and mild mitral regurgitation. (AR 511).

On March 6, 2016 Plaintiff was seen for right flank pain and persistent cough. (AR 946). On exam she was tender to palpation in the right paraspinal lumbar and thoracic regions. (AR 949). A CT showed a 6 mm nonobstructing calculus in the right kidney, diverticulosis in the sigmoid colon, and mural fat deposition in the terminal ileum. (AR

950).

On September 8, 2016 x-rays of the left foot and ankle showed arthritic changes and no acute findings. (AR 840).

On October 4, 2016 Plaintiff reported some dizziness with her optical migraines and was taking Topiramate, was taking Citalopram for depression, had right lower abdominal pain and thought she might have Crohn's, and complained of chronic back pain and said no one had ever done anything about it. (AR 818). Plaintiff appeared to be in pain and had limited range of motion in her back secondary to pain, and was referred to pain management for evaluation and treatment. (AR 818–820).

On October 14, 2016 Plaintiff was seen for a follow-up after going to the ER with flank pain. (AR 815). A CT showed diffuse fatty infiltration of the liver, stone in the left uterus, and right ovarian cyst. Plaintiff appeared to be in pain, was feeling depressed, and was under a lot of stress caring for her grandkids.

On November 10, 2016 Plaintiff was seen for a pain evaluation and reported chronic cervical and lumbar pain since 2006. (AR 852). Her pain was throbbing, numbing, tingling, sharp, dull, aching, electric, pressure, and shooting; worse with lifting, walking, sitting, standing, stress, activity, movement, cold weather, and bending; and relieved by medication, relaxation, lying down, changing positions, and stretching. She also had pain and symptoms in her stomach, hips, knees, arms, feet, shoulders, back, and legs. Plaintiff reported her pain was severe without medication but moderate with pain medications and she was able to function; she did not want narcotics. (AR 852–853). Findings on examination were:

**Musculoskeletal system:**

**Shoulder:**

General/bilateral: ○ Shoulder joints have full range of motion.

**Cervical Spine:**

General/bilateral: ● Cervical spine showed tenderness on palpation of the spinous process. ○ Occipital protuberance (inion) was not tender on palpation. ○ Cervical spine showed full range of motion. ○ A foraminal compression test of the

cervical spine was not performed.

**Thoracic Spine:**

General/bilateral: ○ Thoracic spine exhibited no tenderness on palpation.

**Thoracolumbar Spine (Motion):**

General/bilateral: ○ Thoracolumbar spine demonstrated full range of motion.

**Lumbar / Lumbosacral Spine:**

General/bilateral: ● Lumbosacral spine exhibited tenderness on palpation. ● Lumbosacral spine did not demonstrate full range of motion. ● A straight-leg raising test was positive.

**Pelvis:**

General/bilateral: ○ Both sacroiliac joints did not show tenderness on palpation.

**Knee:**

Right Knee: ● Examined. ○ Medial aspect was not tender on palpation. ○ Lateral aspect was not tender on palpation.

Left Knee: ● Examined. ○ Medial aspect was not tender on palpation. ○ Lateral aspect was not tender on palpation.

**Neurological:**

○ Oriented to time, place, and person.

Gait And Stance: ○ Normal.

Reflexes: ○ Deep tendon reflexes were normal. ○ Biceps reflex was normal +2/4. ○ Brachioradialis reflex was normal +2/4. ○ Triceps reflex was normal  +2/4.

(AR 854–855). The impression was lumbar radiculopathy and Plaintiff was referred for physical therapy and an MRI. (AR 855).

On February 12, 2017 Plaintiff was seen for chest pain, nausea, and shortness of breath. (AR 878). A chest x-ray showed no acute cardiopulmonary abnormality and EKG was normal. (AR 879; 883). The diagnosis was acute pleurisy and acute bronchitis. (AR 880).

On March 27, 2017 Plaintiff reported she had stopped using her CPAP for several

months and was having excessive daytime sleepiness, shortness of breath, and dyspnea on exertion, and a sleep study and 6-minute walk test were recommended. (AR 507). A chest x-ray the same date showed no evidence of pneumonia or congestive heart failure. (AR 650). Plaintiff had low back pain after the walk test (AR 614). A sleep study was done on April 24, 2017 and the impression was obstructive sleep apnea-hypopnea syndrome, moderately severe, and good response to CPAP. (AR 932–933).

On April 11, 2017 Plaintiff was seen for bilateral foot pain and swelling in the left foot. (AR 813). X-rays of both feet showed no acute bony abnormalities and calcaneal spurs. (AR 499).

An April 12, 2017 echocardiogram showed overall left ventricular systolic function normal, normally functioning mechanical prosthetic valve, mild mitral regurgitation, and mild tricuspid regurgitation. (AR 504).

An April 17, 2017 pulmonary function test was mostly normal with a hint of RLD and gas exchange limitation, probably normal. (AR 611).

On June 29, 2017 x-rays of the left foot showed a soft tissue defect at the plantar aspect of the distal left third toe without radiographic evidence of osteomyelitis. (AR 831–832).

On July 24, 2017 Plaintiff was concerned about swelling in her left calf. (AR 1110). A venous duplex was negative for deep vein thrombosis. (AR 1098).

On August 11, 2017 Plaintiff reported she was still having problems breathing and got shortness of breath easily; she was awaiting the start of CPAP. (AR 914).

On August 30, 2017 Plaintiff was seen for a pain evaluation at Pima Pain Center. (AR 1091). She reported cervical, thoracic, and lumbar pain with intermittent bilateral radiculopathy and neuropathy. (AR 1092). Standing, bending, and holding her grandchildren made her pain worse, and PT made it worse. Plaintiff did not have any prescribed pain medications and only wanted to use opioids as a last resort. Findings on exam included:

. . .

Musculoskeletal

- o  Cervical Spine :

  - ▪  Inspection/Palpation :  *trigger point noted at anterior aspect of the interspaces between the transverse processes of C5-C7 (bilateral)*

  - ▪  Axial load testing :  *moderate pain with axial loading*

  - ▪  Range of Motion :  *ROM limited in all directions – moderate*

  - ▪  Tests/Signs :  *Spurling's test positive*

- o  Thoracic Spine :

  - ▪  Inspection/Palpation :  *mild diffuse spasm noted throughout the mid to upper thoracic spine*

- o  Lumbosacral Spine

  - ▪  Inspection/Palpation :  *moderate spasm noted*

  - ▪  Stability :  *mild to moderate pain with extension/axial loading*

  - ▪  Range of Motion :  *range of motion limited due to axial loading*

  - ▪  Tests/ Signs :  *Spurling Positive Bilateral, Slump Positive Bilaterally*

(AR 1094). Plaintiff was also noted to be comfortable sitting without excessive changes in position, had normal gait and was able to stand without difficulty, and had reduced sensation in the distal extremities. (AR 1094–1095). The assessment was chronic pain syndrome, spinal enthesopathy, cervicalgia, pain in thoracic spine, lumbago, cervical spondylosis without myelopathy, thoracic spondylosis without myelopathy, displacement of cervical intervertebral disc without myelopathy, bulge of thoracic disc without myelopathy, and bulging lumbar disc. (AR 1095). The doctor thought Plaintiff had a component of neuropathy secondary to diabetes and wanted to ensure her diabetes continued to be controlled. (AR 1096). He also recommended Plaintiff start the Diet of Hope, schedule PT, get x-rays of the thoracic and lumbar spine, and follow-up in one month.

A May 7, 2018 note from Pima Pain Management states that Plaintiff is unable to work due to severe full spine pain. (AR 9).

B.     Examining Physicians

On June 22, 2015 Plaintiff saw Dr. Fred Wiggins for a psychiatric consultative examination. (AR 456). Plaintiff reported health problems including heart disease, neuropathy, diabetes, sleep apnea, optical seizures, and migraines, and a past history of depression due to an abusive relationship. She had difficulty sleeping due to sleep apnea and medications, was able to manage her basic activities of daily living, and did cooking and light housekeeping based on her physical limitations. (AR 457). Plaintiff stated her current depression was related to her medical issues, and reported moderate anxiety on a daily basis. Plaintiff was not currently in therapy but was prescribed Citalopram. Her examination was normal and the diagnosis was adjustment disorder with mixed anxiety and depressed mood related to her chronic medical issues. (AR 458).

Dr. Wiggins completed a Medical Source Statement and opined that Plaintiff's mental impairments would impose limitations for 12 months and that she had no deficiencies in understanding and memory or adaptation, but that her psychiatric disorder may limit her ability to maintain regular attendance and her motivation for social interaction. (AR 459).

On August 13, 2015 Plaintiff saw Dr. Jeri Hassman for a physical medicine consultative examination. (AR 463). Plaintiff reported that she suffered heart damage from taking a weight loss medication in the 1990s and had an aortic valve replacement in 2006. She has had diabetes since 2007 and frequent tingling of her fingers and toes. She always has a headache, but gets several kinds of headaches including optical seizures/migraines, which are down from daily to 2–3 times a week with Topamax. Plaintiff described her optical migraines as seeing wavy lines come into her visual field and traveling to the middle and then she can't see anything; these were a significant problem when she was at work but only last 2–3 minutes. (AR 463–464). Plaintiff reported falling asleep during the day, sometime while sitting, standing, or in the middle of a conversation, and uses a CPAP but

the mask causes pain around her eyes. (AR 464). She has frequent neck, upper back, and lower back pain, occasional chest pain and shortness of breath, visual problems associated with her optical migraines/seizures, occasional dizziness, decreased memory, and constant tingling in her fingertips and toes.

On exam Plaintiff had normal ambulation without limp or complaints of pain, normal balance and gross motor coordination, was able to stand and walk on her toes and heels, normal balance for tandem walking, hop on either foot without complaint, bend down and pick something up off the floor, kneel down without complaints or pain, and was independent in dressing/undressing, getting on/off the exam table, and getting in/out of the chair. (AR 465). Plaintiff also had full range of motion of the cervical spine without pain and no tenderness, no respiratory distress, full range of motion of upper and lower extremities without pain, normal coordination and dexterity in the hands with no tremor, no evidence of muscle spasm or hypertonicity of the paraspinal muscles, full range of motion of the lumbar spine without pain, negative straight leg raise test bilaterally, and complained of mild low back pain at the end rank of trunk flexion and some sternal pain during trunk flexion. Plaintiff had normal motor strength, sensation, and reflexes in the lower extremities, subjective tingling of her fingertips and toes, and a systolic murmur. (AR 466).

Dr. Hassman diagnosed:

> History of diabetes mellitus, hypertension, hyperlipidemia, and diabetic peripheral neuropathy with very mild tingling of the fingertips and toes. She has normal manual dexterity and normal grip strength bilaterally and has no limitation in activities with her hands.

> Allegation of bulging disks and severe back and neck pain. Unremarkable physical examination of the cervical spine and lumbar spine and normal gait.

> History of severe migraines and optical migraines/optical seizures; these are described in the report and the optical migraines occur 2-3 times per week, but last for only 2 minutes.

> Allegation of temporomandibular joint problems. She has palpable clunking/subluxation of bilateral temporomandibular joints with opening and closing her mouth.

> Allegation of vertigo. The claimant had normal balance and a negative Romberg sign on physical examination.
>
> Status post aortic valve replacement and also a history of leaking of her mitral and tricuspid valves. The claimant did have a holosystolic murmur on physical examination.
>
> History of obstructive sleep apnea and complaints of severe fatigue during the day. The claimant was awake and alert on physical examination and did not appear fatigued or drowsy.

(AR 466). Dr. Hassman also completed a Medical Source Statement and opined that Plaintiff's conditions would impose limitations for 12 continuous months. (AR 467). Dr. Hassman opined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk 6–8 hours, sit 6–8 hours, and had limitations on seeing because although she had normal vision, she had a history of optical migraines/seizures. (AR 468–469). Dr. Hassman further opined that Plaintiff could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally crouch, crawl, and reach; and frequently stoop and feel. (AR 469). Plaintiff also had environmental restrictions for heights, moving machinery, extremes in temperature, chemicals, dust/fumes, and gases. Dr. Hassman noted several times on the form that Plaintiff needed frequent change of position. (AR 468–470).

C.      State Agency Reviewing Physicians

At the initial disability determination level, Dr. David Coffman opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk about 6 hours in an 8-hour workday, sit for about 6 hours, occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, frequently stoop, and occasionally kneel, crouch, and crawl. (AR 80–81). He also recommended that Plaintiff avoid concentrated exposure to extreme temperatures, fumes, odors, dusts, gases, poor ventilation, and hazards, and noted Plaintiff should avoid working around unprotected heights and moving machinery due to her history of vertigo. (AR 81).

On reconsideration, Dr. Charles Fina assessed the same limitations. (AR 102).

. . .

- 11 -

D.   Plaintiff's Testimony

On a Function Report dated April 31, 2015, Plaintiff reported that her migraines, TMJ, optical migraines/seizures, vertigo, and sleep apnea interrupted her concentration and her day. (AR 222). Because of her neuropathy and bulging discs, she can't sit or stand for any length of time without severe pain, and she has pain and tingling in her hands and arms and they go numb from typing or writing. On a typical day she wakes up and stretches, babysits her grandson, naps, picks up the other grandkids from the bus, makes dinner, and goes to bed. (AR 223). She takes care of her grandchildren and her dog, and gets help from her daughter. She can no longer work on computers, lift heavy objects, focus, remember things, or drive, and cannot stay awake because of sleep apnea and medication side effects. She has a hard time dressing because of back pain; it hurts to bend over and she gets dizzy and falls. Plaintiff prepares her own meals and does chores, but has to take breaks because it feels like her back and ribs are breaking and like she's walking on nails. (AR 224). Her family helps her with chores. She goes out 3–4 days a week, can drive, and shops for groceries. (AR 225). Her hobbies are watching tv, doing puzzles, watching grandkids, spending time with family, and napping. (AR 226). She can't exercise because of migraines, optical seizures, and vertigo, and doesn't see her family a lot because she is always sick. Plaintiff reported that her conditions affected her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, see, remember, complete tasks, concentrate, understand, and use her hands. (AR 227). She can only stand and sit for a little bit, and can only walk for a block or less then needs to rest for a minute. Plaintiff can only pay attention for a short period because her mind wanders, can follow written instructions pretty good but has to go back over them many times, and for spoken instructions she will forget them right away unless she writes them down.

On a Disability Report dated March 11, 2015, Plaintiff reported that she stopped working because her vertigo, migraines, and optical migraines were getting worse, and her optical migraines interfered with her vision for 30–45 minutes. (AR 192). She was also falling asleep at work because of her sleep apnea. She was given new job responsibilities

that she couldn't do because of her medical problems and medications, she couldn't remember simple things, and she was diagnosed with anxiety.

At the reconsideration level, Plaintiff reported that she had more frequent shooting pains in her back and up her spine and it hurt when driving. (AR 88). She also reported sharp pains in her legs, behind her knees, and her left hip, and more pain in her feet.

On a Disability Report dated May 5, 2016, Plaintiff reported that she had severe pain in her right side and back when walking, sitting, standing, and sometimes lying down. (AR 252). She can't stand long enough to do dishes, load the dishwasher, or clean the floors, had to take breaks to sit when cooking, and sit to get dressed.

At the hearing before the ALJ, Plaintiff testified that she was let go of her last job because of her health. (AR 44). She had heart surgery in 2006 and has had breathing and heart problems ever since. She has memory problems and forgets things; she wasn't fast enough at work; she would fall asleep at work because of her medications and sleep apnea; and she was out a lot because of medical appointments. She also gets headaches from computers and lights, and gets little seizures called optical migraines. She would get severe migraines at work and have to lay her head on her desk for 45 minutes to an hour. (AR 46). Plaintiff has bulging discs in her back and had an adjustable sit-stand desk at work because of her back pain, and she can't sit or stand for long periods of time. (AR 46). Plaintiff was depressed when she lost her job and unsuccessfully tried to apply for other jobs, then got more depressed and more sick and stopped applying. (AR 45).

Plaintiff has pulmonary aortic hypertension and has a hard time breathing; she is always short of breath and has chest pain, like someone is stabbing her in the chest. (AR 45; 62). She had a mask for her sleep apnea but it was causing her face to swell and she got migraines so she stopped using it, but recently got another one. (AR 45). She has a continuous headache all the time, and also gets migraines when she goes outside, is on the computer, or there is bright flashing light on the tv. (AR 64). She is seeing a pain doctor for her back and her neck and waiting for them to do tests, and has a bone at the base of her neck that has hurt for years.

Plaintiff is fostering her three grandchildren (ages 9, 4, and 2 at the time of the hearing) and plans to adopt them. (AR 47–48). The children are in school/preschool/daycare full-time, and Plaintiff is able to care for them with help from her adult children and DCS respite care. (AR 49). Plaintiff admitted that she certified that she was physically, mentally, and emotionally able to care for the children when she became their foster parent. (AR 50). Although she takes care of them, she does not believe she could go back to work because of her back pain, and she cannot sit, stand, focus, type, work on a computer, lift things, or bend over, and has problems with dizziness and migraines. (AR 51). When she gets a migraine, her children come over to help her with the grandchildren. (AR 61).

Plaintiff is always tired and can fall asleep anywhere. (AR 63). She takes naps while the children are at school so she is awake when they're home, and props herself up on pillows while they play games or watch movies.

Plaintiff is primarily responsible for household chores and grocery shopping. (AR 54). Her daughter drives her places because she doesn't like to drive due to her medications. It takes Plaintiff 3 hours to wash dishes because she has to take so many breaks. (AR 63). The children help her with folding laundry, dishes, and sweeping the floor, and her older daughter comes over to help with chores. (AR 63–64).

Plaintiff stated she could lift her 25-pound grandson but that it hurt to pick him up and she could only hold him for a few minutes because it hurt her back. (AR 58). She can stand for 5 to 10 minutes and then needs to rest, and sit for 10 to 15 minutes. (AR 58–59). Her legs go numb when she sits so she has to constantly move them and get up and readjust herself; she is "always on the move." (AR 58). Her hands go numb and she has neuropathy from her arm to her elbow and her feet to her knees. (AR 59).

E.   Lay Testimony

Selena McDonald, Plaintiff's daughter, completed a third-party function report on May 7, 2015. (AR 202). She reported that she spent 3–4 days a week with Plaintiff running errands and watching tv. Selena stated that Plaintiff had optical seizures and migraines that

affected her vision and concentration and could cause nausea, vertigo causing balance issues, and sleep apnea and fell asleep often during the day. Selena stated Plaintiff cared for her grandchildren and dog and got help from her children when she wasn't feeling well, and spent her days napping, watching tv, and spending time with the grandchildren. (AR 203). Plaintiff prepared simple meals like sandwiches and frozen dinners because her neuropathy pain made it difficult to stand for long periods to cook. (AR 204). Plaintiff did chores but was always fatigued or in pain and needed help. Selena reported that Plaintiff's conditions affected her bending, standing, sitting, stair climbing, memory, completing tasks, and concentration. (AR 207). She could follow written directions well but not spoken directions and would forget what she had been told. Selena further reported that she had seen Plaintiff have multiple seizures within the past month where she would lose focus, her vision would blur, and she would grab onto something and stare straight ahead like she was in a daydream. (AR 210). Each seizure lasts about 3 minutes and Plaintiff's migraine medication was increased to help with them.

F.    Vocational Testimony

At the hearing before the ALJ, Robin Generaux testified as a vocational expert. (AR 65). She classified Plaintiff's past work as an administrative assistant as sedentary, but Plaintiff stated that she lifted up to 100 pounds. (AR 65–66).

The ALJ asked Generaux to assume an individual who could perform a range of light work with the following limitations: occasionally climb ramps and stairs; no ladders, ropes, or scaffolds; frequent stooping; occasional kneeling, crouching, and crawling; frequent bilateral fingering; occasional exposure to extreme cold or heat; occasional exposure to pulmonary irritants; and frequent near acuity. (AR 66). Generaux testified that such a person could perform the work of an administrative assistant as generally performed. If the ALJ added a limitation to semi-skilled work, such a person could not do the job. (AR 66–67). However, Plaintiff would have readily transferrable skills to semi-skilled work for jobs such as receptionist. (AR 67). Generaux further testified that if someone had problems maintaining regular attendance, the most absences an employer would tolerate at the highly

skilled level would be 3 days a month, but 2 days a month at the lower skilled level would not be tolerable. (AR 68).

G.     ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of status post aortic valve replacement, degenerative disc disease, diabetes, and diabetic neuropathy. (AR 28). The ALJ found that Plaintiff's swelling in her left foot and bilateral foot cramping did not cause more than minimal limitation and were nonsevere, and that Plaintiff's sleep apnea was well controlled when she was compliant with treatment and thus nonsevere. (AR 28, 30). The ALJ also found that that Plaintiff's migraines were controlled with medication and were nonsevere, and that to the extent that Plaintiff had some intermittent vision problems related to her migraines, they were nonsevere. (AR 29). Finally, the ALJ considered the paragraph B criteria for evaluating mental disorders and found that Plaintiff had no more than mild limitations in understanding, remembering, and applying information; in social interaction with others; in ability to concentrate, persist, or maintain pace; and in ability to adapt and manage oneself. (AR 29). The ALJ therefore found that Plaintiff's mental impairment was nonsevere. (AR 30).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. (AR 32).

The ALJ gave reduced weight to the state agency medical consultant opinions. (AR 33). The ALJ found that their opinion that Plaintiff could perform a wide range of light work activity with no mental limitations was consistent with the record; however, the ALJ found that Plaintiff did not suffer from any conditions that would limit her exposure to workplace hazards.

The ALJ also gave reduced weight to the consultative examiner opinion because the limitations Dr. Hassman assessed for visual acuity and exposure to workplace hazards were based strictly on Plaintiff's remote history of an optical migraine. (AR 33).

The ALJ gave some weight to the third-party statement of Plaintiff's daughter

1   because she observed Plaintiff daily and could attest to her functioning; however, she was

2   not a medical professional and thus her observations were of limited value. (AR 33).

3         The ALJ found that Plaintiff had the RFC to perform light work with the following

4   limitations: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs,

5   kneel, crouch, and crawl; frequently stoop and bilateral finger; and occasional exposure to

6   temperature extremes and pulmonary irritants. (AR 31). The ALJ found that Plaintiff was

7   unable to perform her past relevant work as an administrative assistant as actually

8   performed at the heavy exertional level, but that she could perform the work as generally

9   performed at the sedentary level. (AR 33–34). The ALJ therefore concluded Plaintiff was

10  not disabled. (AR 34).

11  **III.   Standard of Review**

12         The Commissioner employs a five-step sequential process to evaluate SSI and DIB

13  claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461

14  U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing

15  he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment

16  meets or equals the requirements of a listed impairment; and (4) the claimant's RFC

17  precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

18  At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC

19  to perform other work that exists in substantial numbers in the national economy. *Hoopai

20  v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the

21  claimant "disabled" or "not disabled" at any point in the five-step process, she does not

22  proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

23         The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),

24  1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's

25  findings are based on legal error or are not supported by substantial evidence in the record

26  as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in

27  42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by

28  substantial evidence, shall be conclusive." Substantial evidence "means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Stout v. Comm'r Soc. Sec. Admin*., 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id*. (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how

egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV.  Discussion

Plaintiff argues that the ALJ failed to explicitly address Dr. Hassman's opinion that she needed to change positions frequently and that this error was harmful because the ALJ did not include this limitation in the RFC or hypothetical posed to the VE. Plaintiff further argues that the ALJ failed to provide clear and convincing reasons to reject her testimony that she could not sit for long periods of time and had to adjust herself constantly. Finally, Plaintiff argues that the ALJ failed to provide a legally sufficient reason to discount the lay witness statement, and that the ALJ applied an incorrect definition of disability because he found that her symptoms were not so severe as to prohibit all basic work activities.

The Commissioner argues that the ALJ properly evaluated Dr. Hassman's opinion in assessing Plaintiff's RFC, properly evaluated Plaintiff's subjective allegations, and properly considered the lay witness statement. While the Commissioner offers several post hoc rationalizations to support the ALJ's decision on these issues, this Court reviews only the reasons provided by ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. *Garrison*, 759 F.3d at 1010; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("As we have long held, '[W]e are constrained to *review* the reasons the *ALJ* asserts.'" quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.2003)). Finally, the Commissioner contends that the ALJ applied the correct definition of disability and referred to "basic work activities" in assessing the RFC, not in making the final disability determination at Step Four.

The Court finds that the ALJ failed to provide legally sufficient reasons to discount Plaintiff's subjective symptom testimony and Dr. Hassman's opinion. These errors impacted the ALJ's RFC assessment and the hypotheticals posed to the VE. Consequently, the errors were not harmless because they ultimately impacted the ALJ's Step Four nondisability finding. Because questions remain regarding whether in fact Plaintiff was disabled within the meaning of the SSA during the relevant time period, and because

1  Plaintiff's subjective symptom testimony is best reassessed in light of the record as a whole,

2  the Court finds that remand for further administrative proceedings is appropriate.[3]

3  A. Medical Testimony

4  In weighing medical source opinions in Social Security cases, the Ninth Circuit

5  distinguishes among three types of physicians: (1) treating physicians, who actually treat

6  the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3)

7  non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*,

8  81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the

9  opinion of a treating source than to the opinion of doctors who do not treat the claimant."

10  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830).

11  "Courts afford the medical opinions of treating physicians superior weight because these

12  physicians are in a better position to know plaintiffs as individuals, and because the

13  continuity of their treatment improves their ability to understand and assess an individual's

14  medical concerns." *Potter v. Colvin*, 2015 WL 1966715, at *13 (N.D. Cal. Apr. 29, 2015).

15  "While the opinion of a treating physician is thus entitled to greater weight than that of an

16  examining physician, the opinion of an examining physician is entitled to greater weight

17  than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

18  Where a treating physician's opinion is not contradicted by another physician, it

19  may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. "If a

20  treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

21  may only reject it by providing specific and legitimate reasons that are supported by

22  substantial evidence. This is so because, even when contradicted, a treating or examining

23  physician's opinion is still owed deference and will often be entitled to the greatest weight

24  . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012

25  (internal quotations and citations omitted). Specific, legitimate reasons for rejecting a

26  physician's opinion may include its reliance on a claimant's discredited subjective

27  complaints, inconsistency with the medical records, inconsistency with a claimant's

28  ───────────────
[3] Because the Court will remand this matter for further administrative proceedings on an open record, the Court declines to address the other issues raised by Plaintiff in her appeal.

- 20 -

testimony, or inconsistency with a claimant's ADL. *Tommassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* However, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Finally, if the ALJ determines that the plaintiff's subjective complaints are not credible, this is a sufficient reason for discounting a physician's opinion that is based on those subjective complaints. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Here, the ALJ gave reduced weight to Dr. Hassman's opinion because, "[b]ased on Dr. Hassman's narrative, limitations on the claimant's visual acuity and exposure to workplace hazards was based strictly on the claimant's remote history of an optical migraine." (AR 33). The Court finds that this was not a legally sufficient reason to discount the entirety of Dr. Hassman's opinion. The ALJ failed to cite to any other specific reason to assign the opinion reduced weight, nor did the ALJ cite to any specific record that contradicted Dr. Hassman's opinion. The only reason given by the ALJ was Dr. Hassman's reliance on Plaintiff's remote history of optical migraines, which could not possibly logically apply to the other limitations that Dr. Hassman assessed on lifting, sitting, standing, etc. The Court cannot meaningfully review the ALJ's decision when the ALJ fails to set forth his reasoning. While the Commissioner is not required to "discuss *all* evidence" the Commissioner is required to "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently" and "must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (emphasis in original) (internal quotations and citation omitted); *Garrison*, 759 F.3d at 1012–1013 ("When an ALJ does not explicitly reject a

1    medical opinion or set forth specific legitimate reasons for crediting one medical opinion

2    over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or

3    assigns it little weight while doing nothing more than ignoring it, asserting without

4    explanation that another medical opinion is more persuasive, or criticizing it with

5    boilerplate language that fails to offer a substantive basis for his conclusion.").

6            Further, the ALJ must evaluate any medical opinion according to the requirements

7    set out in 20 C.F.R. § 404.1527(c). Thus, in determining what weight to afford Dr.

8    Hassman's opinion, the ALJ was required to consider (1) the frequency of examination and

9    the length, nature, and extent of the treatment relationship; (2) the evidence in support of

10   Dr. Hassman's opinion; (3) the consistency of the opinion and the record as a whole; (4)

11   whether Dr. Hassman is a specialist; and (5) other factors that would support or contradict

12   Hassman's opinion. The ALJ wholly failed to address these factors here. *See, e.g.*, *Revels*

13   *v. Berryhill*, 874 F.3d 648, 666–67 (9th Cir. 2017) (ALJ erred by failing to state germane

14   reasons to reject physical therapist's opinion in part where although physical therapist only

15   examined claimant once, he did so for 3 ½ hours, extensively reviewed medical records

16   from other doctors, and produced a 9-page report).

17           In sum, the Court finds that the ALJ erred by failing to provide clear and convincing

18   or specific and legitimate reasons supported by substantial evidence to assign reduced

19   weight to Dr. Hassman's opinion that Plaintiff needed to frequently change positions.

20   Particularly in a case such as this where there are no opinions from Plaintiff's treating

21   physicians recommending specific limitations on her ability to work, Dr. Hassman's

22   opinion may provide the best estimation of Plaintiff's physical capabilities and workplace

23   limitations. This error is not harmless because it affected the ALJ's discounting of

24   Plaintiff's subjective symptom testimony, the RFC assessment, and the hypotheticals posed

25   to the VE, and thus the ultimate nondisability finding at Step Four. *See Marsh v. Colvin*,

26   792 F.3d 1170, 1172–74 (9th Cir. 2015) ("a reviewing court cannot consider an error

27   harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting

28   the testimony, could have reached a different disability determination."). Accordingly, the

1   Court finds that this matter should be remanded for further administrative proceedings to

2   reassess Dr. Hassman's opinion and continue the five-step sequential evaluation process.

3                           B.  Plaintiff's Testimony

4           "An ALJ's assessment of symptom severity and claimant credibility is entitled to

5   great weight." *Honaker v. Colvin*, 2015 WL 262972, *3 (C.D. Cal. Jan. 21, 2015) (internal

6   quotations and citations omitted).[4] This is because "an ALJ cannot be required to believe

7   every allegation of disabling pain, or else disability benefits would be available for the

8   asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Treicherler v. Comm'r. Soc.*

9   *Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). "If the ALJ's credibility finding is

10  supported by substantial evidence in the record, the reviewing court may not engage in

11  second-guessing." *Honaker*, 2015 WL 262972 at * 3 (internal quotations and citation

12  omitted).

13          While questions of credibility are functions solely for the ALJ, this Court "cannot

14  affirm such a determination unless it is supported by specific findings and reasoning."

15  *Robbins v. Comm'r Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006). "To determine

16  whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ

17  must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th

18  Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective

19  medical evidence of an underlying impairment 'which could reasonably be expected to

20

21  [4] SSR 16-3p went into effect on March 16, 2016 and supersedes SSR 96-7p, the previous

22  policy governing the evaluation of symptoms. SSR 16-3p, 2016 WL 1119029, *1. The
    ruling indicates that "we are eliminating the use of the term 'credibility' from our sub-
    regulatory policy, as our regulations do not use this term." *Id*. Moreover, "[i]n doing so,

23  we clarify that subjective symptom evaluation is not an examination of an individual's
    character[;] [i]nstead, we will more closely follow our regulatory language regarding

24  symptom evaluation." *Id*. This ruling is consistent with the previous policy and clarifies
    rather than changes existing law. Under either ruling, the ALJ is required to consider the

25  claimant's report of her symptoms against the record—in SSR 96-7p, this resulted in a
    "credibility" analysis; in SSR 16-3, this allows the adjudicator to evaluate "consistency."

26  *Compare* SSR 16-3p *with* SSR 96-7p (both rely on two step process followed by an
    evaluation of claimant's testimony and contain the same factors for consideration).

27          "The change in wording is meant to clarify that administrative law judges aren't in
    the business of impeaching claimants' character," but "obviously administrative law judges

28  will continue to assess the credibility of pain assertions by applicants, especially as such
    assertions often cannot be either credited or rejected on the basis of medical evidence."
    *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F. 2d 341, 344 (9th Cir. 1991)). "Second, if the claimant meets this first test and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of the symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015. Further, "[t]he ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

While it is permissible for an ALJ to look to the objective medical evidence as one factor in determining credibility, the ALJ's adverse credibility finding must be supported by other permissible evidence in the record. *Bunnell*, 947 F.2d at 346–47 ("adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence"). However, "an ALJ may reject a claimant's statements about the severity of his symptoms and how they affect him if those statements are *inconsistent with or contradicted by* the objective medical evidence." *Robbins*, 466 F.3d at 887 (emphasis in original). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotations and citations omitted).

Here, the ALJ did not make a finding that Plaintiff was malingering; therefore, to support his discounting of Plaintiff's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. The ALJ stated that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. (AR

32). However, the ALJ failed to point to any specific statements that he found not credible, nor did he identify any alleged inconsistencies between Plaintiff's testimony and the medical record. *See Morgan*, 169 F.3d at 599; *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion"); *A.B. v. Saul*, 2019 WL 6139163, at *7 (C.D. Cal. July 23, 2019) (ALJ made the identical conclusory statement as here and "at no point thereafter in the decision did the ALJ link specific parts of Plaintiff's testimony 'to the particular parts of the record' to support his rejection of Plaintiff's testimony."). Specific to the issue raised by Plaintiff here, although the ALJ summarized Plaintiff's testimony and noted Plaintiff's statements that she could not sit or stand for very long and had to adjust her position after sitting for about 10–15 minutes, the ALJ did not specifically state whether he found those statements to be credible or inconsistent with the record. Further, in assessing Plaintiff's RFC and posing hypotheticals to the VE, the ALJ did not include any limitations based on Plaintiff's testimony that she could not sit or stand for very long and had to adjust her position.

In sum, the undersigned finds that the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony—indeed, the ALJ failed to provide any reasons at all, save for the standard boilerplate language that Plaintiff's statements were "not entirely consistent" with the record. The Court further finds that this error was not harmless. *See Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."). Had the ALJ properly considered Plaintiff's testimony regarding her symptoms and limitations, it would have also impacted the ALJ's RFC finding and the hypothetical posed to the VE. *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (finding VE opinion could not be relied on where ALJ failed to provide clear and convincing reasons to reject claimant's testimony and did not include claimant's subjective limitations in the RFC). Thus, this error was harmful because it affected the ultimate nondisability determination. *See Molina*, 674 F.3d at 1115; *Brown-Hunter*, 806 F.3d at 494 ("[H]ere, we

cannot discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [plaintiff's] testimony to be not credible.").

## V.    Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

"[T]he required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of

time." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* "In evaluating [whether further administrative proceedings would be useful, the Court considers] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04. "This requirement will not be satisfied if 'the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record,' because '[t]hese are exactly the sort of issues that should be remanded to the agency for further proceedings.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler*, 775 F.3d at 1105).

Here, the Court finds remand for further administrative proceedings is appropriate. The ALJ erred by failing to address Dr. Hassman's opinion that Plaintiff needed to change positions frequently, and the ALJ's comment regarding Plaintiff's remote history of optical migraines cannot be a legally sufficient reason to assign reduced weight to this portion of Dr. Hassman's opinion. The ALJ also erred by failing to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony, and specifically failed to address why Plaintiff's statements that she could only sit and stand for short periods of time were inconsistent with the record. Because of these errors, the ALJ did not include any limitations on sitting/standing or the need to change positions in the RFC assessment or the hypotheticals posed to the VE. It is thus unclear whether Plaintiff would be able to perform any light or sedentary work with a sit/stand option. Consequently, issues remain regarding Plaintiff's RFC and her ability to perform work existing in significant numbers in the national economy during the relevant time period. *See Hill v. Astrue*, 698 F.3d 1153, 1162–63 (9th Cir. 2012).

This Court offers no opinion as to whether Plaintiff is disabled within the meaning of the Act. "The touchstone for an award of benefits is the existence of a disability, not the

agency's legal error." *Brown-Hunter*, 806 F.3d at 495. Plaintiff's RFC and subjective symptom testimony are best reassessed in consideration of the entire record, and on remand the ALJ shall give further consideration to all of the previously submitted medical testimony and lay testimony and continue the sequential evaluation process to determine whether Plaintiff is in fact disabled. Additionally, the ALJ is required to consider all of Plaintiff's alleged impairments, whether severe or not, in the assessment on remand. SSR 86–8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations imposed by all of an individual's impairments, even those that are not 'severe.'"). "Viewing the record as a whole [this Court] conclude[s] that Claimant may be disabled. But, because the record also contains cause for serious doubt, [the Court] remand[s] . . . to the ALJ for further proceedings on an open record." *Burrell*, 775 F.3d at 1142. The Court expresses no view as to the appropriate result on remand.

## VI.    Conclusion

In light of the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision is remanded back to an ALJ on an open record with instructions to issue a new decision regarding Plaintiff's eligibility for disability insurance benefits. The Clerk of Court shall enter judgment accordingly and close its file on this matter.

Dated this 28th day of May, 2020.

Eric J. Markovich
United States Magistrate Judge